1 | BENJAMIN B. WAGNER
United States Attorney
2 | S. ROBERT TICE-RASKIN
Assistant United States Attorney
3 | 501 I Street, Suite 10-100
Sacramento, CA 95814
4 | Telephone: (916) 554-2700
Facsimile: (916) 554-2900
5

**FILED**

APR 1 0 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

6 | Attorneys for Plaintiff
United States of America
7

# SEALED

8 | IN THE UNITED STATES DISTRICT COURT

9 | EASTERN DISTRICT OF CALIFORNIA

10 | 2:13-cr-0125 TLN

11 | UNITED STATES OF AMERICA, | CASE NO.

12 | Plaintiff, | VIOLATIONS: 18 U.S.C. § 1343 - Wire Fraud
(5 Counts); 18 U.S.C. § 1957 - Money Laundering
13 | v. | (6 Counts); 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. §
2461(c), and 18 U.S.C. § 982(a)(1) – Criminal
14 | MARCUS BUCKLEY, and | Forfeiture
KIMBERLY JONES,
15
| Defendants.
16

17 | I N D I C T M E N T

18 | COUNTS ONE THROUGH FIVE: [18 U.S.C. § 1343 – Wire Fraud]

19 | The Grand Jury charges:

20 | MARCUS BUCKLEY, and
KIMBERLY JONES,
21
defendants herein, as follows:
22 | I.

23 | **INTRODUCTION**

24 | 1. MARCUS BUCKLEY ("BUCKLEY") played professional football in the National

25 | Football League between approximately 1993 and 2000 for seven seasons with the New York Giants

26 | ("Giants") and between 2000 and 2001 for part of one season with the Atlanta Falcons. During the

27 | former time period, the Giants had workers' compensation insurance coverage through Pennsylvania

28 | Manufacturer's Association Insurance Group ("PMA").

Indictment 1

2. From at least 2010 through 2011, BUCKLEY was a resident of Weatherford, Texas.

3. At all times relevant to this Indictment, Gallagher Bassett Services, Inc. ("Gallagher Bassett") was a third-party administrator which managed, among other things, workers' compensation claims in California on behalf of PMA.

4. From September 2001 through August 2011, KIMBERLY JONES ("JONES") was employed as a Senior Claims Representative, commonly known as a claims adjuster, at Gallagher Bassett in its Sacramento, California, office.

5. In 2006, BUCKLEY filed a worker's compensation claim against the Giants for cumulative stress injuries sustained, in part, in California.

6. Commencing in or about September 2007, the BUCKLEY claim was reviewed and managed by Gallagher Bassett. After initial assignment to one Gallagher Bassett claims representative, the BUCKLEY claim was re-assigned to JONES on or about July 6, 2009.

7. On or about March 9, 2010, the California Worker's Compensation Appeals Board ("WCAB") conducted a hearing regarding the BUCKLEY claim and, on April 12, 2010, issued findings and an award in favor of BUCKLEY with respect to the claim.

8. In or about September 2010, another claims representative was assigned to the BUCKLEY claim and JONES ceased to be the assigned representative.

9. During the first week of November 2010, BUCKLEY, the Giants, and PMA settled the BUCKLEY claim for $300,000.00 pursuant to a "Compromise and Release" Agreement executed by all parties. The agreement specifically covered claims by BUCKLEY, among others, related to temporary disability, permanent disability, future medical treatment, and "self-procured medical treatment." Per the agreement, BUCKLEY forever discharged the Giants and PMA from all claims resulting from his athletic injuries once the agreement was approved by the WACB and payment was made as required.

10. On or about November 9, 2010, the WCAB approved the Compromise and Release Agreement.

11. On or about November 16, 2010, Gallagher Bassett issued the final payment due to BUCKLEY under the terms of the Compromise and Release Agreement and, on or about November 30, 2010, Gallagher Bassett closed the file.

Indictment 2

1   12.   In 2010 and 2011, Gallagher Bassett utilized and followed the following systems,
2   practices and/or policies for disability claims management in its Sacramento office, all of which were
3   known to defendant JONES:

4           a.   Gallagher Bassett had a specialized computerized system, Risx-Facs, to manage
5   its claims process. When a medical provider or claimant submitted documentation for reimbursement,
6   the documentation was ordinarily uploaded onto the computer system to be stored in an electronic
7   format, rather than in a paper format.

8           b.   Claims for medical expenses associated with the claimant were ordinarily paid
9   directly to the medical provider, not the claimant. Medical service providers were required to submit
10  medical bills or invoices to Gallagher Bassett that substantiated the services provided. Moreover, claims
11  for medical expenses were ordinarily submitted to independent bill reviewers for a recommendation as
12  to which portion of the claim should be allowed and/or disallowed.

13          c.   If a claimant sought reimbursement for out-of-pocket expenses of any sort, the
14  claimant would be required to submit to Gallagher Bassett both invoices that substantiated the services
15  provided and expenses incurred, as well as proof of payment that substantiated the payments made.

16          d.   Claims representatives reviewed all claims to determine whether the benefits
17  sought were, in fact, due and payable to the claimant.   Claims representatives reviewed all medical
18  bills, in particular, to ensure that the medical services related to the claimant's worker's compensation
19  claim. Ordinarily, medical bills included the following basic information: the provider name, provider
20  address, dates of services, procedure codes or treatment, diagnosis, date of injury and a tax identification
21  number.

22          e.   The maximum amount of money that KIMBERLY JONES was allowed to place
23  in a designated reserve for payment of a claim based on her sole authority was $100,000. Any request to
24  increase the reserve over $100,000 required management approval.

25          f.   The maximum amount of medical expenses that a claims representative was
26  authorized to reimburse based on his/her sole authority was $50,000. Reimbursement for amounts
27  higher than $50,000 required management approval.

28

Indictment                                                          3

1          g.     An open file report was generated approximately every ninety days for both

2 Gallagher Bassett and PMA for all open claims files. If a file was closed prior to the end of the ninety

3 day period, it would not appear on the report. Supervisors at Gallagher Bassett were required to review

4 open claim files with claims representatives every ninety days. If a file were closed prior to ninety days,

5 no review was required.

6          h.     Gallagher Bassett claims representatives had an electronic facsimile or "e-fax"

7 system that allowed them to receive facsimiles from claimants and medical providers via the claims

8 representatives' electronic mail. In order to efficiently store documents in an electronic form, rather

9 than voluminous hard-copy form, claims representatives commonly would open the documents sent by

10 facsimile to their e-fax account and save the documents directly to the relevant claims file on the

11 Gallagher Bassett computer system.

12 **II.**

13 **SCHEME TO DEFRAUD**

14    13.     Beginning at a time unknown, but not later than in or about September 2010, and

15 continuing thereafter up to and including June 2011, in the State and Eastern District of California, and

16 elsewhere, defendants MARCUS BUCKLEY and KIMBERLY JONES did knowingly intend to devise,

17 devise, participate in, and execute a material scheme and artifice to defraud Gallagher Bassett and a

18 scheme to obtain money from Gallagher Bassett by means of material false and fraudulent pretenses and

19 representations. As a result of the fraud, defendants BUCKLEY and JONES caused the issuance of over

20 $1.5 million in fraudulent insurance payments to defendant BUCKLEY to which he was not entitled.

21 **III.**

22 **WAYS AND MEANS**

23    14.     Defendant BUCKLEY contacted defendant JONES, frequently by telephone, and made

24 requests for reimbursement for fictitious medical expenses that, in fact, he had not incurred.

25    15.     Defendant BUCKLEY prepared and caused the preparation of false and fictitious

26 invoices and statements from medical providers for medical services purportedly provided to him from

27 approximately 1999 through 2003. Defendant BUCKLEY prepared and caused the preparation of false

28 and fictitious credit collection notices from collection agencies purportedly seeking payment from

Indictment                                      4

1  BUCKLEY from various medical providers for past due medical bills, with services dates from
2  approximately 1999 through 2010. Many of the invoices, statements and credit collection notices were
3  devoid of basic information regarding the purported medical services including the dates of service, the
4  procedure codes or treatment rendered, and/or the provider address.

5      16.    Defendant BUCKLEY transmitted and caused the transmission of false and fictitious
6  invoices, statements and credit collection letters by facsimile from various numbers in Fort Worth,
7  Texas, to defendant JONES' e-fax account at Gallagher Bassett in Sacramento, California, paying for
8  the transmission of certain documents with his bank debit card.

9      17.    To effectuate the fraud, defendant JONES repeatedly re-opened BUCKLEY's disability
10 claims file, even though the file had been closed shortly after the case had settled.

11     18.    Defendant JONES repeatedly raised the reserve limit for the BUCKLEY claims file
12 without required management authorizations for reserve changes over $100,000.

13     19.    Defendant JONES requested the issuance of checks to BUCKLEY through an electronic
14 request system in Sacramento, California. Generally, JONES requested checks after BUCKLEY
15 submitted fictitious credit collection letters, statements and invoices, even though, as she well knew,
16 there was no reliable indication that BUCKLEY had received any medical services, that the services
17 related to his disability claim, and/or that he had paid the medical provider.

18     20.    In some instances, JONES requested checks before BUCKLEY submitted any fictitious
19 credit collection letters, even though, as she well knew, there was no indication that BUCKLEY had
20 received any medical services and that the services related to his disability claim. In order to conceal
21 the fraud, when defendant JONES subsequently received credit collection letters sent by BUCKLEY to
22 her e-fax account (which included facsimile headers indicating the true date of transmission), she caused
23 these documents to be scanned and placed in the electronic claims file for BUCKLEY without the
24 facsimile header and date, and affixed a back-dated paid stamp which falsely suggested that these letters
25 had been received prior to the issuance of these checks.

26     21.    In many instances, JONES requested checks without any known claims documentation to
27 establish that BUCKLEY had received medical services related to his claim and/or that he had paid the
28 medical provider.

Indictment                                          5

1  22.  In order to prevent detection of the fraud, JONES invariably requested that checks be
2  issued in amounts just under $50,000, her maximum payment authority. When JONES received
3  multiple claims requests at the same time which aggregated over $50,000, she caused separate checks to
4  be requested, each below $50,000.

5  23.  In many instances, JONES requested checks for amounts significantly more than the
6  supporting documentation associated with the particular claim for reimbursement.

7  24.  JONES's electronic check requests caused checks to be issued and sent by mail from
8  Citibank in Maryland to BUCKLEY in Texas.

9  25.  Defendant BUCKLEY received over $1,588,000 in funds to which he was not entitled.
10  BUCKLEY negotiated the checks through various Citibank accounts held in his name. Ordinarily,
11  BUCKLEY immediately withdrew the funds in cash from his account or requested the issuance of bank
12  checks in sums between $20,000 to $40,000, payable to him.  BUCKLEY ultimately used the proceeds
13  of the fraud for various personal expenses.

14  26.  Defendant JONES closed the claims file after making a payment and before the end of a
15  ninety day period, so as to avoid detection of the fraud during required reviews for files open beyond
16  ninety days.

17  **IV.**

18  **WIRINGS**

19  27.  On or about the dates set forth below, within the Eastern District of California, and
20  elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud and
21  attempting to do so, defendants did cause to be transmitted by means of wire communication in
22  interstate commerce, certain writings, signs, signals and sounds, from Texas, to Gallagher Bassett in
23  Sacramento, California, as set forth below:

24

| Count | Date of Facsimile | Document(s) Sent by Facsimile |
|---|---|---|
| 1 | February 11, 2011 | January 24, 2011 Letters from Northstar Location Services |
| 2 | March 7, 2011 | February 25, 2011 Letters from Creditors Interchange |
| 3 | April 11, 2011 | March 31, 2011 Letters from Creditors Source |

28

Indictment                                          6

| 4 | April 18, 2011 | April 6, 2011 Letter from Creditors Source |
| 5 | April 25, 2011 | April 12, 2011 Letters from Creditors Source |

All in violation of Title 18, United States Code, Sections 2 and 1343.

COUNTS SIX THROUGH ELEVEN:·      [18 U.S.C. § 1957 - Money Laundering]

The Grand Jury further charges: T H A T

MARCUS BUCKLEY,

defendant herein, on or about the dates set forth below, in the State and Eastern District of California, and elsewhere, did knowingly engage and attempt to engage in the following monetary transactions by, through or to a financial institution, namely Citibank, in Weatherford, Texas, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, to wit:  defendant Buckley caused the issuance of the checks set forth below, payable to himself, such funds having been derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, after having participated in the transfer of the proceeds of the specified unlawful activity from the Eastern District of California to Texas, namely:

| Count | Date | Check No. | Amount |
|-------|------|-----------|--------|
| 6 | February 7, 2011 | 330192717 | $20,000 |
|   |   | 330192718 | $20,000 |
| 7 | March 11, 2011 | 330217807 | $20,000 |
|   |   | 330217809 | $20,000 |
| 8 | March 16, 2011 | 3330217793 | $20,000 |
| 9 | April 22, 2011 | 3330217867 | $20,000 |
| 10 | May 27, 2011 | 3330217848 | $20,000 |
| 11 | July 14, 2011 | 3330217964 | $40,000 |

All in violation of Title 18, United States Codes, Sections 2 and 1957.

//

//

Indictment                                      7

1  FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and
2                          18 U.S.C. § 982(a)(1) - Criminal Forfeiture]

3       1.    Upon conviction of one or more of the offenses alleged in Counts One through Five of

4  this Indictment, defendants MARCUS BUCKLEY and KIMBERLY JONES shall forfeit to the United

5  States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal,

6  which constitutes or is derived from proceeds traceable to such violations, including but not limited to a

7  sum of money equal to the amount of proceeds traceable to such offenses for which defendants are

8  convicted.

9       2.    Upon conviction of one or more of the offenses alleged in Counts Six through Eleven of

10 this Indictment, defendant MARCUS BUCKLEY shall forfeit to the United States, pursuant to 18

11 U.S.C. § 982(a)(1), all property, real and personal, involved in such violations, and any property

12 traceable to such property, including but not limited to a sum of money equal to the amount of money

13 involved in the offenses for which defendant is convicted.

14      3.    If any property subject to forfeiture, as a result of the offenses alleged in Counts One

15 through Eleven of this Indictment for which defendants are convicted:

16           a.    cannot be located upon the exercise of due diligence;

17           b.    has been transferred or sold to, or deposited with, a third party;

18           c.    has been placed beyond the jurisdiction of the court;

19           d.    has been substantially diminished in value; or

20           e.    has been commingled with other property which cannot be divided without

21                 difficulty,

22 it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1) ,

23 incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendants up to the value

24 //

25 //

26 //

27 //

28 //

Indictment                                    8

1 | of the property subject to forfeiture.

2 | A TRUE BILL.

3 | /s/ Signature on file w/AUSA

4 | FOREPERSON

5

6

7 | BENJAMIN B. WAGNER
United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Indictment                              9

No. _____

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

## MARCUS BUCKLEY and KIMBERLY JONES

## I N D I C T M E N T

**VIOLATION(S):**
18 U.S.C. § 1343 - Wire Fraud (5 counts);
18 U.S.C. § 1957 - Money Laundering (6 counts); and
18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and
18 U.S.C. § 982(a)(1) - Criminal Forfeiture

*A true bill,*

*/s/ Signature on file w/AUSA*

_____
*Foreman.*

*Filed in open court this* _____ 10 _____ *day*

*of* ___ April ___ , *A.D. 20* 1 3

_____
*Clerk.*

*Bail, $* _____

**NO BAIL WARRANT**

Both Defendants

GPO 863 525

2:13- CR- 0125 TLN

PENALTY SLIP


DEFENDANT:                  MARCUS BUCKLEY


COUNTS ONE THROUGH FIVE
VIOLATION:                  18 U.S.C. § 1343 - Wire Fraud

PENALTY:                    Not more than 20 years imprisonment,
                            Not more than $250,000 fine, or twice the gross
                            gain/loss whichever is greater.
                            Not more than 3 years supervised release.


COUNTS SIX THROUGH ELEVEN
VIOLATION:                  18 U.S.C. § 1957 - Money Laundering

PENALTY:                    Not more than 10 years imprisonment,
                            not more than a $250,000 fine, or both.
                            Not more than 3 years supervised release.



DEFENDANT:                  KIMBERLY JONES


COUNTS ONE THROUGH FIVE
VIOLATION:                  18 U.S.C. § 1343 - Wire Fraud

PENALTY:                    Not more than 20 years imprisonment,
                            Nnot more than $250,000 fine, or twice the gross
                            gain/loss whichever is greater.
                            Not more than 3 years supervised release.


VIOLATION:                  18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) -
                            Criminal Forfeiture

PENALTY:                    As stated in Indictment


PENALTY ASSESSMENT:         $100.00 assessment (each count)


2:13-CR-0125 TLN