1 | BENJAMIN B. WAGNER
United States Attorney
2 | MICHAEL M. BECKWITH
Assistant United States Attorney
3 | 501 I Street, Suite 10-100
Sacramento, CA 95814
4 | Telephone: (916) 554-2700
Facsimile: (916) 554-2900
5 |

6 | Attorneys for Plaintiff
United States of America
7 |

**FILED**

**JUN 3 0 2016**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

8 | IN THE UNITED STATES DISTRICT COURT

9 | EASTERN DISTRICT OF CALIFORNIA

10 |

11 | UNITED STATES OF AMERICA,          CASE NO. 2:13-cr-125 TLN

12 |                    Plaintiff,
                                     PLEA AGREEMENT
13 |        v.

14 | MARCUS BUCKLEY,

15 |                    Defendant.

16 |

17 | **I.    INTRODUCTION**

18 | **A.    Scope of Agreement.**

19 | The indictment in this case charges the defendant with violations of 18 U.S.C. § 1343 (Wire

20 | Fraud) and 18 U.S.C. § 1957 (Money Laundering). This document contains the complete plea

21 | agreement between the United States Attorney's Office for the Eastern District of California (the

22 | "government") and the defendant regarding this case. This plea agreement is limited to the United

23 | States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or

24 | local prosecuting, administrative, or regulatory authorities.

25 | **B.    Court Not a Party.**

26 | The Court is not a party to this plea agreement. Sentencing is a matter solely within the

27 | discretion of the Court, and the Court may take into consideration any and all facts and circumstances

28 | concerning the criminal activities of defendant, including activities which may not have been charged in

PLEA AGREEMENT                    1

the indictment.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.    **DEFENDANT'S OBLIGATIONS**

### A.    **Guilty Plea.**

The defendant will plead guilty to count six of the indictment, money laundering, in violation of 18 U.S.C. § 1957.  The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea (attached hereto as Exhibit A) are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.    **Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses.  Defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii).  Pursuant to that provision, as well as 18 U.S.C. § 3663A(a)(3), defendant agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those

PLEA AGREEMENT                    2

1  counts to be dismissed as part of the plea agreement, and any other victims as a result of the defendant's
2  conduct for the period of approximately September 2010 through June 2011. The amount of restitution
3  will be approximately $1,500,000 to $1,750,000.

4        The defendant anticipates paying $750,000 in restitution prior to sentencing. The defendant
5  agrees that the funds used to pay restitution will come from a lawful source. The parties may request a
6  reasonable delay in sentencing to allow the defendant to secure the aforementioned the restitution funds.

7        The defendant further agrees that he will not seek to discharge any restitution obligation or any
8  part of such obligation in any bankruptcy proceeding.

9        Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the
10  Court immediately before the sentencing hearing. If the defendant is unable to pay the restitution at the
11  time of sentencing, he agrees to earn the money to pay the restitution, if necessary, by participating in
12  the Inmate Financial Responsibility Program.

13  **C.**   **Special Assessment.**

14        The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering
15  a check or money order payable to the United States District Court to the United States Probation Office
16  immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at
17  the time of sentencing, he agrees to earn the money to pay the assessment, if necessary, by participating
18  in the Inmate Financial Responsibility Program.

19  **D.**   **Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

20        If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea,
21  or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The
22  government will no longer be bound by its representations to the defendant concerning the limits on
23  criminal prosecution and sentencing as set forth herein. One way a cooperating defendant violates the
24  plea agreement is to commit any crime or provide any statement or testimony which proves to be
25  knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant
26  constituting obstruction of justice will also be a violation of the agreement. The determination whether
27  the defendant has violated the plea agreement will be under a probable cause standard.
28  ///

PLEA AGREEMENT         3

1     If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the
2  government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded
3  guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and
4  (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall
5  thereafter be subject to prosecution for any federal criminal violation of which the government has
6  knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or
7  all of these options is solely in the discretion of the United States Attorney's Office.

8     By signing this plea agreement, the defendant agrees to waive any objections, motions, and
9  defenses that the defendant might have to the government's decision. Any prosecutions that are not
10  time-barred by the applicable statute of limitations as of the date of this plea agreement may be
11  commenced in accordance with this paragraph, notwithstanding the expiration of the statute of
12  limitations between the signing of this plea agreement and the commencement of any such prosecutions.
13  The defendant agrees not to raise any objections based on the passage of time with respect to such
14  counts including, but not limited to, any statutes of limitation or any objections based on the Speedy
15  Trial Act or the Speedy Trial Clause of the Sixth Amendment, to any counts that were not time-barred as
16  of the date of this plea agreement.

17     In addition, (1) all statements made by the defendant to the government or other designated law
18  enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,
19  whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or
20  administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no
21  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal
22  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by
23  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.
24  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

25     **E.    Asset Disclosure.**

26     The defendant agrees to make a full and complete disclosure of his assets and financial
27  condition, and will complete the United States Attorney's Office's "Authorization to Release
28  Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change

PLEA AGREEMENT                          4

1  of plea. The defendant also agrees to have the Court enter an order to that effect. The defendant
2  understands that this plea agreement is voidable at the option of the government if the defendant fails to
3  complete truthfully and provide the described documentation to the United States Attorney's office
4  within the allotted time.

5      **F.      Agreement to Cooperate.**

6      The defendant agrees to cooperate fully with the government and any other federal, state, or local
7  law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation"
8  requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews,
9  in correspondence, telephone conversations, before a grand jury, or at any trial or other court
10 proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the
11 defendant's presence is requested by the government or compelled by subpoena or court order; (3) to
12 produce voluntarily any and all documents, records, or other tangible evidence requested by the
13 government; (4) not to participate in any criminal activity while cooperating with the government; and
14 (5) to disclose to the government the existence and status of all money, property, or assets, of any kind,
15 derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal
16 activities or the illegal activities of any conspirators.

17              **III.      THE GOVERNMENT'S OBLIGATIONS**

18      **A.      Dismissals.**

19      The government agrees to move, at the time of sentencing, to dismiss without prejudice the
20 remaining counts in the pending indictment as to this defendant. The government also agrees not to
21 reinstate any dismissed count except if this agreement is voided as set forth herein, including paragraph
22 II.D (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)).

23      **B.      Recommendations.**

24          1.      Incarceration Range.

25      The government will recommend that the defendant be sentenced to the low end of the
26 applicable guideline range so long as the Court determines that defendant's final offense level is 21 or
27 higher.

28 ///

PLEA AGREEMENT                                5

1          2.     Acceptance of Responsibility.

2          The government will recommend a two-level reduction (if the offense level is less than 16) or a
3  three-level reduction (if the offense level reaches 16) in the computation of his offense level if the
4  defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. §
5  3E1.1 through and including the time of sentencing.

6          3.     Reduction of Sentence for Cooperation.

7          The government agrees to recommend at the time of sentencing that the defendant's sentence of
8  imprisonment be reduced by up to 50% of the applicable guideline sentence if he provides substantial
9  assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that he must
10  cooperate as set forth herein and not violate this plea agreement.  The defendant understands that it is
11  within the sole and exclusive discretion of the government to determine whether the defendant has
12  provided substantial assistance.

13          The defendant understands that the government may recommend a reduction in his sentence of
14  less than 50% or no reduction at all; depending upon the level of assistance the government determines
15  that the defendant has provided.

16          The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a
17  recommendation and is not binding on the Court, that this plea agreement confers no right upon the
18  defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers
19  no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion.  In
20  particular, the defendant agrees not to try to file a motion to withdraw his guilty plea(s) based on the fact
21  that the government decides not to recommend a sentence reduction or recommends a sentence
22  reduction less than the defendant thinks is appropriate.

23          If the government determines that the defendant has provided further cooperation within one
24  year following sentencing, the government may move for a further reduction of his sentence pursuant to
25  Rule 35 of the Federal Rules of Criminal Procedure.

26     **C.     Use of Information for Sentencing.**

27          The government is free to provide full and accurate information to the Court and Probation,
28  including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate

PLEA AGREEMENT                           6

1 statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also
2 understands and agrees that nothing in this Plea Agreement bars the government from defending on
3 appeal or collateral review any sentence that the Court may impose.

4     Further, other than as set forth above, the government agrees that any incriminating information
5 provided by the defendant during his cooperation will not be used in determining the applicable
6 guideline range, pursuant to U.S.S.G. § 1B1.8., unless the information is used to respond to
7 representations made to the Court by the defendant, or on his behalf, that contradict information
8 provided by the defendant during his cooperation.

9 

IV.    **ELEMENTS OF THE OFFENSE**

10     At a trial, the government would have to prove beyond a reasonable doubt the following
11 elements of money laundering, the offense to which the defendant is pleading guilty: (1) the defendant
12 knowingly engaged or attempted to engage in a monetary transaction; (2) the defendant knew the
13 transaction involved criminally derived property; (3) the property had a value greater than $10,000; (4)
14 the property was, in fact, derived from the wire fraud alleged in counts one through five of the
15 indictment; and (5) the transaction occurred in the United States.

16     The defendant fully understands the nature and elements of the crimes charged in the indictment
17 to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with
18 his attorney.

19 

V.    **MAXIMUM SENTENCE**

20     A.    **Maximum Penalty.**

21     The maximum sentence that the Court can impose is 10 years of incarceration, a fine under Title
22 18 of the United States Code, a 3-year period of supervised release, and a special assessment of $100.
23 By signing this plea agreement, the defendant also agrees that the Court can order the payment of
24 restitution for the full loss caused by the defendant's wrongful conduct and defendant agrees to pay
25 restitution for the full loss of the wire fraud scheme described in the indictment. The defendant agrees
26 that the restitution order is not restricted to the amounts alleged in the specific count(s) to which he is
27 pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in
28 any present or future bankruptcy proceeding any restitution imposed by the Court.

PLEA AGREEMENT        7

**B.     Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 2 additional years imprisonment.

## VI.     SENTENCING DETERMINATION

**A.     Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.     Stipulations Affecting Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1.     Base Offense Level: 23 (USSG § 2S1.1(a)(1))

The parties agree that the defendant participated in the commission of the underlying fraud scheme and laundered proceeds from that scheme. Pursuant to U.S.S.G § 2S1.1(a)(1), n.2(C), the base offense level for a money laundering offense is the same as the offense level for the underlying offense from which the laundered funds were derived, not including the Chapter Three adjustments. As such, the base offense level for the money laundering offense is 23.

2.     Section 1957 Conviction: +1 (USSG § 2S1.1(b)(2)(A))

3.     Adjusted Offense Level: 24

4.     Acceptance of Responsibility: As noted previously.

1    *Regarding Departures or Other Enhancements or Reductions*: The parties agree that they will
2    not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments
3    (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the
4    government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1)
5    or post-plea obstruction of justice (§3C1.1). The parties also stipulate and agree that they will not argue
6    for a sentencing variance from the guidelines in this case under 18 U.S.C. § 3553(a). However, should
7    the defendant pay $750,000 or more in restitution prior to sentencing, he may, under those limited
8    circumstances, seek a sentencing variance from the guidelines in this case under 18 U.S.C. § 3553(a).
9    The government is free to oppose any such argument.

10    The defendant agrees that the application of the United States Sentencing Guidelines and 18
11    U.S.C. § 3553(a) by the Court to his case results in a reasonable sentence. He also agrees, except under
12    the limited circumstances detailed at the end of the preceding paragraph, that he will not request that the
13    Court apply the sentencing factors under 18 U.S.C. § 3553 to arrive at a sentence below the low-end of
14    the above stipulated guidelines. The defendant acknowledges that if he requests or suggests in any
15    manner a different sentence than what is called for under the advisory guideline range as stipulated
16    above, the plea agreement is voidable at the option of the government. The government, in its sole
17    discretion, may withdraw from the plea agreement and continue with its prosecution of the defendant as
18    if the parties had never entered into this plea agreement.

19    ## VII.    WAIVERS

20    ### A.    Waiver of Constitutional Rights.

21    The defendant understands that by pleading guilty he is waiving the following constitutional
22    rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to
23    be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to
24    testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be
25    compelled to incriminate himself.

26    ### B.    Waiver of Appeal and Collateral Attack.

27    The defendant understands that the law gives the defendant a right to appeal his guilty plea,
28    conviction, and sentence. The defendant agrees as part of his plea, however, to give up his right to

PLEA AGREEMENT                          9

1  appeal the guilty plea, conviction, and the sentence imposed in this case, so long as the sentence
2  imposed does not exceed 46 months of imprisonment. The defendant specifically gives up the right to
3  appeal any order of restitution the Court may impose.

4       In addition, regardless of the sentence the defendant receives, the defendant also gives up any
5  right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any
6  aspect of the guilty plea, conviction, or sentence.

7       Notwithstanding the agreement in paragraph III.A above that the government will move to
8  dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the
9  underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading
10  guilty, the government shall have the rights set forth in Section II.D herein.

11       **C.    Waiver of Attorneys' Fees and Costs.**

12       The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-
13  119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the
14  investigation and prosecution of all charges in the above-captioned matter and of any related allegations
15  (including without limitation any charges to be dismissed pursuant to this plea agreement and any
16  charges previously dismissed).

17                    **VIII.    ENTIRE PLEA AGREEMENT**

18       Other than this plea agreement, no agreement, understanding, promise, or condition between the
19  government and the defendant exists, nor will such agreement, understanding, promise, or condition
20  exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and
21  counsel for the United States.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

PLEA AGREEMENT                         10

1    ## IX.    APPROVALS AND SIGNATURES

2    **A.    Defense Counsel.**

3    I have read this plea agreement and have discussed it fully with my client. The plea agreement

4    accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to

5    plead guilty as set forth in this plea agreement.

6    Dated:    6/30/16

7    _____
     SCOTT N. CAMERON
     Attorney for Defendant

8

9    **B.    Defendant:**

10   I have read this plea agreement and carefully reviewed every part of it with my attorney. I

11   understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully

12   understand my rights with respect to the provisions of the Sentencing Guidelines and 18 U.S.C. § 3553

13   that may apply to my case. No other promises or inducements have been made to me, other than those

14   contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter

15   into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

16   Dated: 6/30/ 2016

17   _____
     MARCUS BUCKLEY
     Defendant

18

19   **C.    Attorney for United States:**

20   I accept and agree to this plea agreement on behalf of the government.

21   Dated:    6/30/ 2016                    BENJAMIN B. WAGNER
                                             United States Attorney
22

23   _____
     MICHAEL M. BECKWITH
24   Assistant United States Attorney

25

26

27

28

PLEA AGREEMENT                    11

EXHIBIT "A"

Factual Basis for Plea

MARCUS BUCKLEY ("BUCKLEY") played professional football in the National Football League between approximately 1993 and 2000 for seven seasons with the New York Giants ("Giants"). During this time period, the Giants had workers' compensation insurance coverage through Pennsylvania Manufacturer's Association Insurance Group ("PMA").

From September 2001 through August 2011, KJ was employed as a Senior Claims Representative, or claims adjuster, at Gallagher Bassett Services, Inc. ("Gallagher Bassett") in its Sacramento office. Gallagher Bassett was a third-party administrator which managed, among other things, workers' compensation claims in California on behalf of PMA.

In 2006, BUCKLEY filed a worker's compensation claim against the Giants for cumulative stress injuries sustained while playing football, in part, in California. During the first week of November 2010, BUCKLEY, the Giants, and PMA settled the BUCKLEY claim for $300,000.00 pursuant to a "Compromise and Release" Agreement.

After BUCKLEY's claim had been settled, between late 2010 and June 2011, BUCKLEY prepared and filed numerous additional requests for reimbursement under his claim. As part of these requests, BUCKLEY prepared false and fictitious invoices and statements from medical providers for medical services purportedly provided to him. Other times BUCKLEY prepared false and fictitious credit collection notices from collection agencies purportedly seeking payment from BUCKLEY from various medical providers for past due medical bills. BUCKLEY transmitted the false and fictitious invoices, statements and credit collection letters to defendant KJ. Defendant KJ was aware that BUCKLEY was not entitled to additional reimbursement under his disability claim and that the submitted documentation and requests were false and fictitious. This notwithstanding, defendant KJ caused the issuance of Gallagher Bassett checks payable to BUCKLEY, and BUCKLEY ultimately received over $1,588,000 in funds to which he was not entitled (approximately $900,000 of which were supported by false and fictitious claims and the balance of which no valid basis for payment could be located).

///

1    BUCKLEY admits that he knowingly engaged or attempted to engage in a monetary transaction,

2 as specified in count six of the indictment, with funds he received from KJ. BUCKLEY admits that he

3 knew the transaction involved criminally derived property, and that the property had a value greater than

4 $10,000. BUCKLEY also admits that the property was, in fact, derived from the wire fraud that he and

5 KJ committed, as alleged in counts one through five of the indictment, and that the transaction occurred

6 in the United States.

7    I have read the above Factual Basis and agree that it is true and accurate.

8

9

10 Dated: June 30th 2016

11                               MARCUS BUCKLEY
                              Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT            A-2